1   THOMAS P. O'BRIEN (SB# 166369)
    thomasobrien@paulhastings.com
2   KATHERINE F. MURRAY (SB# 211987)
    katherinemurray@paulhastings.com
3   NICHOLAS BEGAKIS (SB# 253588)
    nickbegakis@paulhastings.com
4   PAUL, HASTINGS, JANOFSKY & WALKER LLP
    515 South Flower Street
5   Twenty-Fifth Floor
    Los Angeles, CA  90071-2228
6   Telephone:  (213) 683-6000
    Facsimile:  (213) 627-0705
7
    Attorneys for Defendants
8   His Highness Sheikh Khalifa Bin Zayed Al Nahyan, His Highness Sheikh
    Mohamed Bin Zayed Al Nahyan, and General Saeed Hilal Abdullah Al Darmaki
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13   KHALED AL HASSEN,                    CASE NO.: 09-CV-01106-DMG
                                          (FMOX)
14              Plaintiff,
                                          MEMORANDUM OF POINTS AND
15        vs.                             AUTHORITIES IN SUPPORT OF
                                          DEFENDANTS' MOTION TO
16   SHEIKH KHALIFA BIN ZAYED AL          DISMISS FOR:
     NAHYAN, an individual; SHEIKH
17   MOHAMED BIN ZAYED AL                 (1) LACK OF PERSONAL
     NAHYAN, an individual; GENERAL           JURISDICTION;
18   SAEED HILAL ABDULLAH AL              (2) LACK OF SUBJECT MATTER
     DARMAKI, an individual; and DOES         JURISDICTION;
19   1 to 10, inclusive,                  (3) FAILURE TO STATE A CLAIM;
                                          (4) INSUFFICIENT SERVICE OF
20              Defendants.                   PROCESS;
                                          (5) NON-JUSTICIABILITY; AND
21                                        (6) FORUM NON CONVENIENS

22                                        Date:  July 12, 2010
                                          Time: 9:30 a.m.
23                                        Courtroom: 7

24                                        [Notice of Motion and Motion; Request
                                          for Judicial Notice; and Declaration of Dr.
25                                        Faraj Abdullah Ahnish filed and served
                                          concurrently herewith]
26

27

28

LEGAL_US_W # 64407937.8

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    RELEVANT FACTS ............................................................................ 3
       A.    Plaintiff ................................................................................ 3
       B.    Defendants ........................................................................... 4
       C.    Plaintiff's Attempted Service of Process On Defendants .................... 4

III.   THIS COURT LACKS PERSONAL JURISDICTION TO HEAR
       THIS CASE ....................................................................................... 4
       A.    There Is No General Jurisdiction Over Defendants ......................... 5
       B.    There Is No Specific Jurisdiction Over Defendants ........................ 6
             1.    Defendants Have Not Purposefully Availed Themselves
                   Of Doing Business In This Forum ....................................... 7
             2.    Plaintiff's Claims Do Not "Arise Out Of" or "Relate To"
                   Defendants' Contacts with California ................................... 7
             3.    The Exercise Of Jurisdiction Over Defendants Does Not
                   Comport With Notions of Fair Play and Substantial
                   Justice ........................................................................ 8
       C.    Sheikh Mohamed and Sheikh Khalifa Are Absolutely Immune
             Under the Head-of-State Immunity Doctrine ............................... 9

IV.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
       PLAINTIFF'S CLAIMS ....................................................................... 10
       A.    Standard for a Rule 12(b)(1) Motion to Dismiss .......................... 10
       B.    The FSIA Precludes This Court From Presiding Over This Case ...... 10

V.     ALL OF PLAINTIFF'S CLAIMS ARE BARRED BY THE
       STATUTES OF LIMITATIONS ............................................................. 12
       A.    Standard for Rule 12(b)(6) Motion to Dismiss ............................ 12
       B.    Plaintiff's TVPA Claim Is Time-Barred And Is Not Subject To
             A Fourteen-Year Tolling Period ............................................. 13
       C.    Plaintiff's Tort Claims Are Also Time-Barred ............................ 15

VI.    PLAINTIFF CANNOT MAINTAIN A CLAIM UNDER THE TVPA
       BECAUSE HE DID NOT EXHAUST HIS REMEDIES IN THE UAE ..... 16

VII.   DEFENDANTS HAVE NOT BEEN PROPERLY SERVED .................... 18
       A.    There Are No Internationally Agreed Means Of Serving UAE
             Citizens ........................................................................... 18
       B.    Plaintiff's Personal Service on Defendants Violated UAE Law ........ 19
       C.    Plaintiff's Service Under Rule 4(f)(3) Was Defective ................... 19

# TABLE OF CONTENTS
## (continued)

**Page**

VIII.  PLAINTIFF'S CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE .................................................................................... 20

IX.  THE COURT SHOULD DISMISS THIS ACTION UNDER THE DOCTRINE OF FORUM NON CONVENIENS ..................................... 21

    A.  The UAE Offers An Adequate Alternative Forum For This Case ..... 22

    B.  Both Private and Public Interest Factors Justify Dismissal for Forum Non Conveniens ..................................................................... 23

X.  CONCLUSION .............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Asahi Metal Indus. Co. v. Super. Ct. (Cheng Shin Rubber Indus. Co.)*,
    480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) ......................................... 8

*Ashcroft v. Iqbal*,
    -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .............................. 3, 12, 13

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) ........................................................................... 12

*Ballard v. Savage*,
    65 F.3d 1495 (9th Cir. 1995) ............................................................................. 7

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398, 84 S. Ct. 923, 11 L. Ed. 2d 804 (1964) ................................... 3, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................... 6, 7, 12

*Benny v. Pipes*,
    799 F.2d 489 (9th Cir. 1986) ............................................................................ 18

*Brockmeyer v. May*,
    383 F.3d 798 (9th Cir. 2004) ............................................................................ 18

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ................................. 6, 8

*Chuidian v. Philippine Nat'l Bank*,
    912 F.2d 1095 (9th Cir. 1990) .......................................................................... 11

*Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*,
    61 F.3d 696 (9th Cir. 1995) ..................................................................... 3, 22, 24

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ........................................................................... 5

1

## TABLE OF AUTHORITIES
### (continued)

2

Page(s)

3

*DeSoto v. Yellow Freight Sys., Inc.,*

4
    957 F.2d 655 (9th Cir. 1992) ............................................................. 13

5

*Deutsch v. Turner Corp.,*

6
    324 F.3d 692 (9th Cir. 2003) ....................................................... 13, 14

7

*Doe I v. Qi,*
    349 F. Supp. 2d 1258 (N.D. Cal. 2004) ............................................. 11

8

9

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002) ............................................................. 5

10

11

*Eisenberg v. Ins. Co. of N. Am.,*
    815 F.2d 1285 (9th Cir. 1987) ...................................................... 2, 15

12

13

*Estate of Domingo v. Republic of Philippines,*
    808 F. 2d 1349 (9th Cir. 1986) ........................................................... 9

14

15

*Export Group v. Reef Indus., Inc.,*
    54 F.3d 1466 (9th Cir. 1995) ...................................................... 2, 11

16

17

*Fink v. Shedler,*
    192 F.3d 911 (9th Cir. 1999) ............................................................ 13

18

19

*Gates Learjet Corp. v. Jensen,*
    743 F.2d 1325 (9th Cir. 1984) ............................................................ 6

20

21

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ................... 22, 23

22

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) ............... 2, 5

23

24

*The Hereros v. Deutsche Afrika-Linien Gmblt & Co.,*
    No. 05-1872, 2006 U.S. Dist. LEXIS 2761
    (D.N.J. Jan. 17, 2006) ...................................................................... 14

25

26

*Hilao v. Estate of Marcos,*
    103 F.3d 767 (9th Cir. 1996) ...................................................... 16, 17

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Hoang Van Tu v. Koster*,
     364 F.3d 1196 (10th Cir. 2004) ......................................................... 14

*Howland v. Resteiner*,
     No. 07-CV-2332, 2007 U.S. Dist. LEXIS 89593
     (E.D.N.Y. Dec. 5, 2007) ........................................................................ 9

*IMO Indus., Inc. v. Kiekert AG*,
     155 F.3d 254 (3rd Cir. 1998) ................................................................ 7

*In re World War II Era Japanese Forced Labor Litig.*,
     164 F. Supp. 2d 1160 (N.D. Cal. 2001) ............................................. 13

*Indus. Tectonics, Inc. v. Aero Alloy*,
     912 F.2d 1090 (9th Cir. 1990) ........................................................... 10

*Int'l Shoe Co. v. Wash.*,
     326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ............................... 5

*Irwin v. Dep't of Veterans Affairs*,
     498 U.S. 89, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990) ..................... 14

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
     115 F.3d 1020 (D.C. Cir. 1997) ......................................................... 12

*Kilroy v. Windsor (Prince Charles, The Prince of Wales)*,
     Civ. No. C-78-291 (N.D. Ohio 1978) ................................................... 9

*Leetsch v. Freedman*,
     260 F.3d 1100 (9th Cir. 2001) ........................................................... 24

*Liu v. Republic of China*,
     892 F.2d 1419 (9th Cir. 1989) ........................................................... 20

*Mastafa v. Australian Wheat Bd. Ltd.*,
     No. 07 Civ. 7955, 2008 U.S. Dist. LEXIS 73305
     (S.D.N.Y. Sept. 25, 2008) .................................................................. 22

*Matar v. Dichter*,
     500 F. Supp. 2d 284 (S.D.N.Y. 2007) .......................................5, 9, 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*McNutt v. Gen. Motors Acceptance Corp.*,
   298 U.S. 178, 56 S. Ct. 780, 80 L. Ed. 1135 (1936) ........................................... 10

*Milla v Tamayo*,
   187 Cal. App. 3d 1453 (1986) ....................................................................... 2, 15

*Nabulsi v. Nahyan*,
   No. H-06-2683, 2009 U.S. Dist. LEXIS 49661
   (S.D. Tex. June 12, 2009) ..................................................................... 2, 7, 9, 19

*Negaard v. Dep't of Aeronautics*,
   32 Cal. App. 3d 92 (1973) ............................................................................... 15

*Norgart v. The Upjohn Co.*,
   21 Cal 4th 383, 981 P.2d 79 (1999) ................................................................ 13

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*,
   331 F. Supp. 92 (C.D. Cal. 1971) .................................................................... 12

*Repub. of Philippines v. Marcos*,
   806 F.2d 344 (2d Cir. 1986) ............................................................................ 21

*Rocke v. Canadian Auto. Sport Club*,
   660 F.2d 395 (9th Cir. 1981) ............................................................................. 8

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) ................................. 21

*Spray, Gould & Bowers v. Associated Int'l Ins. Co.*,
   71 Cal. App. 4th 1260 (1999) .......................................................................... 15

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................................... 13

*Turedi v. Coca Cola Co.*,
   460 F. Supp. 2d 507 (S.D.N.Y. 2006) ............................................................ 22

*United Bank for Africa PLC v. Coker*,
   No. 94 Civ. 0655, 2003 U.S. Dist. LEXIS 20880
   (S.D.N.Y. Nov. 17, 2003) ................................................................................ 24

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*V.C. v. Los Angeles Unified School Dist.*,
  139 Cal. App. 4th 499 (2006) .................................................................. 16

*Valdez v. U.S.*,
  837 F. Supp. 1065 (E.D. Cal. 1993) ...................................................... 10

*Villeda Aldana v. Del Monte Fresh Produce N.A., Inc.*,
  578 F.3d 1283 (11th Cir. 2009) ................................................. 22, 23, 25

*W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp.*,
  493 U.S. 400, 110 S. Ct. 701, 107 L. Ed. 2d 816 (1990) .................... 20

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) ....................... 6

**STATUTES**

28 U.S.C. § 1350, note 2(b) ................................................................. 2, 16

28 U.S.C. § 1350, note 2(c) ................................................................. 2, 13

28 U.S.C. § 1605(a) ............................................................................... 11

Cal. Civ. Proc. Code § 335.1 ............................................................. 2, 15

Cal. Civ. Proc. Code § 340(3) ........................................................... 2, 15

Cal. Civ. Proc. Code § 410.10 ............................................................... 5

Foreign Sovereign Immunities Act, 28 U.S.C. § 1604 .................... passim

Torture Victim's Protection Act, 28 U.S.C. § 1350 ........................ passim

**RULES**

Fed. R. Civ. P. 4 ................................................................................... 18

Fed. R. Civ. P. 4(f) ......................................................................... 18, 20

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

3    Fed. R. Civ. P. 4(f)(1) ............................................................................... 19

4
     Fed. R. Civ. P. 4(f)(2) ............................................................................... 19
5
     Fed. R. Civ. P. 4(f)(2)(A) .......................................................................... 19
6
7    Fed. R. Civ. P. 4(f)(3) ............................................................................... 19

8    Fed. R. Civ. P. 4(k)(2) ................................................................................. 9

9    Fed. R. Civ. P. 12(b)(1) ............................................................................. 10

10   Fed. R. Civ. P. 12(b)(6) ............................................................................. 12

11

12

13   **OTHER AUTHORITIES**

14   S. Rep. No. 102-249 (1991)................................................................... 16, 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   **PRELIMINARY STATEMENT**

Plaintiff Khaled Al Hassen ("Plaintiff") has filed a complaint against three of the highest ranking members of the United Arab Emirates ("UAE") government for actions purportedly taken over twenty-three years ago.  Specifically, Plaintiff alleges that, in 1984, while he was working in the UAE for a UAE consulting firm, His Highness Sheikh Khalifa Bin Zayed Al Nahyan ("Sheikh Khalifa"), His Highness Sheikh Mohamed Bin Zayed Al Nahyan ("Sheikh Mohamed"), and General Saeed Hilal Abdullah Al Darmaki ("General Saeed") (collectively, "Defendants") abducted and detained (or caused the abduction and detention of) Plaintiff, who was held against his will and treated inhumanely for either one or two years.  Compl., ¶¶ 1, 14, 15.[1]

Based on these allegations, Plaintiff filed his lawsuit in February 2009, alleging violations of the Torture Victim's Protection Act, 28 U.S.C. § 1350 ("TVPA"), assault and battery, false arrest and imprisonment, intentional infliction of emotional distress, and civil conspiracy.  Plaintiff asserts that he did not file his lawsuit sooner (*i.e.*, within any applicable statute of limitations period) because he only recently came to believe that Defendants would not seek to harm him for filing a lawsuit "as recent political events have solidified the UAE's desire to maintain favorable relations with the United States."  Compl., ¶ 27.  Plaintiff does not explain what "recent political events" have quelled his purported fear of reprisal or when such "political events" transpired.

Plaintiff's Complaint is nonjusticiable and untimely and should be dismissed for several reasons.

First, this Court lacks personal jurisdiction over Defendants, who are citizens of, and reside in, the UAE.  Compl., ¶¶ 10-12.  All of the alleged acts giving rise to Plaintiff's claims occurred entirely within the UAE and have no connection to the

---

[1] Plaintiff's allegations regarding the duration of the alleged detention are inconsistent.  *Compare* Compl., ¶ 1 (nearly two years) *with* Compl., ¶¶ 14, 15 (less than one year).

U.S. or California.  *See id.* at ¶¶ 14-15.  *Helicopteros Nacionales de Colombia*, *S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404, 411-12 (1984) (requiring personal jurisdiction to state a claim).

Second, Defendants are immune from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1604 ("FSIA"), and thus this Court lacks subject matter jurisdiction to hear this case.  *See Export Group v. Reef Indus., Inc.*, 54 F.3d 1466 (9th Cir. 1995) (foreign states and their instrumentalities and agents are presumptively immune from U.S. jurisdiction).

Third, Plaintiff's claims are barred by the applicable statutes of limitations.  *See, e.g.*, 28 U.S.C. § 1350, note 2(c) (ten year statute of limitations governing the TVPA); Cal. Civ. Proc. Code § 340(3), *amended by* Cal. Civ. Proc. Code § 335.1 (one year statute of limitations for assault, battery, and false imprisonment); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285 (9th Cir. 1987) (one year statute of limitations for intentional infliction of emotional distress); *Milla v Tamayo*, 187 Cal. App. 3d 1453, 1460 (1986) (one year statute of limitations for civil conspiracy).

Fourth, with respect to the TVPA claim, Plaintiff has not exhausted his remedies in the UAE, a prerequisite to filing a TVPA claim.  *See* 28 U.S.C. § 1350, note 2(b).

Fifth, Plaintiff has not properly served Defendants.  While this Court granted Plaintiff's *ex parte* application to serve Defendants at the UAE Embassy in the U.S., Plaintiff's request was improper because this Court lacks personal jurisdiction over Defendants and Plaintiff's method of service is prohibited by UAE law.  *See Nabulsi v. Nahyan*, No. H-06-2683, 2009 U.S. Dist. LEXIS 49661, at *32 (S.D. Tex. June 12, 2009) (denying request for alternate service of process where plaintiffs failed to establish that court had personal jurisdiction over defendants).

Sixth, Plaintiff's claims are barred by the Act of State Doctrine, which precludes courts from inquiring into the validity of the public acts of a recognized

foreign sovereign power committed within its own territory.  *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427-28, 84 S. Ct. 923, 940-41, 11 L. Ed. 2d 804, 823- 24 (1964) (applying Act of State Doctrine in declining to review the propriety of expropriation of private property that occurred within Cuba).

Finally, Plaintiff's claims should be dismissed because this District is a seriously inconvenient forum for this lawsuit.  The UAE offers a more adequate and alternative forum for Plaintiff's claims, and the balance of public and private interest factors favor litigation of Plaintiff's claims in the UAE.  *See Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) (upholding lower court's finding that both private and public interest factors pointed to foreign court as more appropriate forum).

## II.     RELEVANT FACTS[2]

### A.     Plaintiff

Plaintiff has been an American citizen since 1975.  Compl., ¶ 9.  He alleges that in the early 1980's he was employed as a manager for International Trading Circle ("ITC"), a consulting firm based in the UAE, which is owned by Sheikh Shaya Bin Ahmed al Hamed ("Sheikh Shaya"), a member of the Abu Dhabi Royal Family and a "rival" of Defendants.  *Id.*  According to Plaintiff, on either January 11, 1984 or January 11, 1985, while working for ITC, he was abducted and detained by individuals working for Defendants, and was released on November 4, 1985.  *Id*. at ¶¶ 1, 14-15.  Plaintiff alleges that during this detention he was subjected to physical abuse by Defendants and unnamed individuals acting at Defendants' direction, all of whom were acting under actual or apparent authority of the government of the UAE.  *Id*. at ¶¶ 20-22.  Plaintiff returned to the U.S. after leaving the UAE in 1985, and does not claim to have lived anywhere other than the

---

[2] These allegations are taken as true strictly for the purposes of this Motion to Dismiss; however, the Court is not required to accept conclusory allegations or conclusions of law as true.  *Ashcroft v. Iqbal*, - U.S.-, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009).

U.S. in the 24 years following his alleged detention.  Plaintiff alleges that he kept quiet about his alleged detention for nearly a quarter of a century for fear of reprisal, until recent "political events" made it safe for him to bring suit.  *Id.* at ¶ 27.

### B. Defendants

Defendants are all citizens and residents of the UAE.  Compl., ¶¶ 10-12.  At the time of the alleged abduction, Sheikh Khalifa was the head of both the UAE Army and the UAE State Security Agency.  *Id.* at ¶ 10.  In 1985, Sheikh Mohamed was a Major in the UAE Air Force, and General Saeed was the UAE State Minister for Interior Affairs.  *Id.* at ¶¶ 11-12.  Currently, Sheikh Khalifa is the President of the UAE, Emir of Abu Dhabi, and chairman of the Abu Dhabi Fund for Development.  Sheikh Mohamed is the Crown Prince of Abu Dhabi and the Deputy Supreme Commander of the UAE Armed Forces.  General Saeed remains the State Minister for Interior Affairs and is the Chairman and Chief Executive Officer of Elenco Emirates Group.

### C. Plaintiff's Attempted Service of Process On Defendants

On or about January 25, 2010, Plaintiff filed (but did not serve) an *ex parte* application requesting permission to serve Defendants by several alternative methods.  Docket No. 11. On March 3, 2010, this Court issued an Order, allowing Plaintiff to serve General Saeed by mailing copies of the Summons and Complaint to three businesses in the UAE in which General Saeed holds a leadership position, and to serve Sheikh Khalifa and Sheikh Mohamed by personally delivering or sending by certified mail a copy of the Summons and Complaint to either the UAE Ambassador to the U.S. or the military attaché.  Docket No. 19.

## III.  THIS COURT LACKS PERSONAL JURISDICTION TO HEAR THIS CASE

Defendants have no contacts with the State of California; as a result, due process precludes this Court's exercise of personal jurisdiction over Defendants.  In assessing whether personal jurisdiction exists, a District Court applies the long-arm

LEGAL_US_W # 64407937.8

statute of the state in which it sits. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). California law provides that this Court may exercise personal jurisdiction on any basis not inconsistent with constitutional due process. Cal. Civ. Proc. Code § 410.10. Constitutional due process is satisfied only when a foreign defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945) (citation omitted).

Nonresident defendants can be subject to either general jurisdiction or specific jurisdiction. *Helicopteros*, 466 U.S. at 414-15. General jurisdiction exists where a nonresident defendant maintains "substantial, continuous and systematic" contacts with the forum state, regardless of whether plaintiff's claims are related to the defendant's forum-related activities. *Id.*; *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). Specific jurisdiction attaches where the cause of action arises out of the defendant's forum-related activities. *Id.* Neither general nor specific jurisdiction exists here.

In addition, even if Plaintiff could properly allege that general or specific jurisdiction existed over Defendants in this case, the doctrine of head of state immunity absolutely precludes this Court from exercising personal jurisdiction over Sheikh Mohamed and Sheikh Khalifa. *See Matar v. Dichter*, 500 F. Supp. 2d 284, 290 (S.D.N.Y. 2007) (citation omitted) ("A head-of-state recognized by the United States government is absolutely immune from personal jurisdiction in United States courts," regardless of whether the claims alleged against them arise from official or private acts).

### A.     There Is No General Jurisdiction Over Defendants

Defendants are not residents of California, they have no physical presence in California, and they do not maintain any significant contacts with the forum; as a result, the exercise of general jurisdiction is inappropriate here. To establish

1    general jurisdiction, Defendants' contacts with the state must be so great that they
2    "approximate physical presence."  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325,
3    1331 (9th Cir. 1984).  In other words, Defendants' presence must be such that
4    subjecting them to liability within the forum would be reasonable.  *World-Wide
5    Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed.
6    2d 490, 501 (1980) (a substantial presence in the state is one which would give the
7    defendant the expectation of being liable in the state).

8          Although Plaintiff alleges that Defendants have sustained "continuous and
9    systematic minimum contacts" with the U.S. and that they purposefully directed
10   activities towards the U.S. (Compl., ¶¶ 10-12), Plaintiff's mere recitation of the
11   rule, without any facts to support his claims, is insufficient to establish that
12   Defendants are subject to personal jurisdiction in this District.  *See Bell Atl. Corp.
13   v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)
14   (allegations that are nothing more than a "formulaic recitation of the elements"
15   cannot survive a motion to dismiss).  Plaintiff must allege facts showing that
16   Defendants directed activities towards the U.S., and specifically, California.  *Id.*
17   ("Factual allegations must be enough to raise a right to relief above the speculative
18   level . . .").  Plaintiff's complete failure to articulate any specific actions taken by
19   Defendants in California precludes this Court from asserting general jurisdiction
20   over Defendants.

21          **B.      There Is No Specific Jurisdiction Over Defendants**

22          As the acts giving rise to Plaintiff's claims did not occur within California,
23   there is no specific jurisdiction here.  To establish specific jurisdiction, Plaintiff
24   must show that:  (1) Defendants purposefully availed themselves of this forum;
25   (2) Plaintiff's claims "arise out of" or "relate to" Defendants' contacts with
26   California; and (3) the exercise of jurisdiction comports with notions of fair play
27   and substantial justice.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76,
28

105 S. Ct. 2174, 2184-85, 85 L. Ed. 2d 528, 543-44 (1985).  None of these factors exists here.

### 1.  Defendants Have Not Purposefully Availed Themselves Of Doing Business In This Forum

There are no facts showing that Defendants have purposefully availed themselves of the privilege of conducting business in California.  To show purposeful availment, Plaintiff must allege facts demonstrating that "the defendant has taken deliberate action within the forum state or … has created continuing obligations to forum residents."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *see also Nabulsi v. Nahyan*, 2009 U.S. Dist. LEXIS 49661, at *43-44 (holding that even repeated visits to the forum state, and a contract between a UAE Sheikh and the Plaintiff was insufficient to justify the exercise of personal jurisdiction in the requested forum state).  Here, none of the alleged actions was undertaken in California or even the U.S.  Compl., ¶ 14.  Plaintiff's unsupported conclusion that Defendants have "purposefully availed themselves" of the laws of the U.S., without more, carries no weight.  *Twombly*, 550 U.S. at 555.

### 2.  Plaintiff's Claims Do Not "Arise Out Of" or "Relate To" Defendants' Contacts with California

Similarly, Plaintiff's claims do not arise out of or relate to any conduct occurring in California, or even the U.S.  Plaintiff alleges that Defendants engaged in "acts intended to disrupt the contractual relationship between ITC and plaintiff, and plaintiff's activities in the United States on behalf of ITC."  Compl., ¶¶ 9-12.  This allegation fails to demonstrate that Plaintiff's claims arise out of or relate to Defendants' contacts with the U.S., and it does not show that Defendants' activities were directed at California.  Rather, Plaintiff must "point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3rd Cir. 1998) (personal jurisdiction against a foreign corporation can attach only if the foreign corporation intentionally

1  targeted the forum).  Furthermore, as Plaintiff alleges, ITC, the company for whom

2  he worked at the time of his alleged detention, is a UAE company.  Compl., ¶ 9.

3  Thus, allegations that Defendants attempted to disrupt Plaintiff's relationship with a

4  UAE company cannot possibly demonstrate that Plaintiff's claims arise out of

5  Defendants' contacts with the U.S. or California.

6  ### 3.  The Exercise Of Jurisdiction Over Defendants Does Not Comport With Notions of Fair Play and Substantial Justice

7  Finally, even if Plaintiff had alleged facts showing that Defendants

8  purposefully availed themselves of this District and that Plaintiff's claims arise out

9  of or relate to Defendants' contacts with California (which he has not), the exercise

10  of personal jurisdiction over Defendants would violate traditional notions of "fair

11  play and substantial justice."  *Burger King*, 471 U.S. at 476.  Determining whether

12  the exercise of jurisdiction violates notions of fair play turns on an evaluation of

13  several factors, including:  (1) the burden on the defendant; (2) the forum state's

14  interest in the suit; (3) the plaintiff's interest in obtaining relief; and (4) the judicial

15  system's interest in obtaining the most efficient resolution of controversies.  *Asahi

16  Metal Indus. Co. v. Super. Ct. (Cheng Shin Rubber Indus. Co.)*, 480 U.S. 102, 113,

17  107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92, 105 (1987).  Litigating Plaintiff's claim in

18  California would be inefficient and unfair for Defendants, who reside in the UAE

19  and hold extremely high governmental positions which require their presence and

20  attention.  In addition, California has little, if any, interest in providing a forum for

21  this litigation because all of the alleged actions occurred in the UAE, and none of

22  the parties is alleged to be a California resident.[3]  *See id.* at 114 ("[b]ecause the

23  plaintiff is not a California resident, California's legitimate interests in the dispute

24  have considerably diminished"); *Rocke v. Canadian Auto. Sport Club*, 660 F.2d

25  395, 400 (9th Cir. 1981) (finding that trial efficiency is best served in the "center"

26

27

28
_____

[3] While Plaintiff states in his Complaint that he is a United States citizen, he does not ever claim that he is a California resident.  Compl., ¶ 1.

of the litigation, where the alleged acts occurred).  Thus, allowing this case to
proceed in this District would unnecessarily expend this Court's already scarce
resources, especially since Plaintiff is alleging tort claims under the laws of the
UAE.  *See* Compl., ¶¶ 50, 54, and 60.  Furthermore, as discussed in greater detail
below, Plaintiff may adequately seek relief in the UAE, where the alleged detention
occurred, and need not bring the case in the U.S. in order to litigate these issues.
*See infra*, section IX.[4]

### C.   Sheikh Mohamed and Sheikh Khalifa Are Absolutely Immune Under the Head-of-State Immunity Doctrine

Regardless of whether general or specific jurisdiction exists, this Court
cannot exercise personal jurisdiction over Sheikh Mohamed and Sheikh Khalifa
under any circumstances because they are heads of state recognized by the U.S.
government, and thus "absolutely immune from personal jurisdiction in United
States courts," regardless of whether the claims alleged against them arise from
official or private acts.  *Matar v. Dichter*, 500 F. Supp. 2d 284, 290 (S.D.N.Y.
2007); *see also Estate of Domingo v. Republic of Philippines*, 808 F. 2d 1349, 1351
(9th Cir. 1986) (acknowledging the validity of head of state immunity, so long as an
official retains his title and authority).  This immunity is granted to heads of state
recognized as such by the U.S. government.  *Matar*, 500 F. Supp. 2d at 290.  *See
also Howland v. Resteiner*, No. 07-CV-2332, 2007 U.S. Dist. LEXIS 89593, at *2
(E.D.N.Y. Dec. 5, 2007) (Acknowledging that the prime minister of Grenada and
his wife were entitled to head of state immunity); *Kilroy v. Windsor (Prince*

---

[4] In his *ex parte* application regarding service on Defendants, Plaintiff argued that personal jurisdiction existed over Defendants under Federal Rule of Civil Procedure 4(k)(2), which establishes personal jurisdiction for federal claims where (1) the defendant is not subject to general jurisdiction in any state, and (2) the exercise of jurisdiction is consistent with the Constitution and the laws of the United States.  *See* Docket No. 11-1 at pp. 15-19.  Because exercising personal jurisdiction over Defendants in this case would violate due process, Rule 4(k)(2) does not provide a basis for personal jurisdiction here.  *See Nabulsi*, 2009 U.S. Dist LEXIS 49661, at *66 (holding that court lacked personal jurisdiction under Rule 4(k)(2) even though plaintiff routinely visited the forum state with his family).

*Charles, The Prince of Wales)*, Civ. No. C-78-291 (N.D. Ohio 1978), *excerpted in* 1978 Dig. U.S. Prac. Int'l L. 641-43 (Prince Charles as heir apparent to the throne deemed a head-of-state in accordance with State Department suggestion of immunity).  The U.S. State Department recognizes Sheikh Mohamed as the Crown Prince of Abu Dhabi, and Sheikh Khalifa as the UAE's Federal President and the Ruler of Abu Dhabi.  *See* Defendant's Request for Judicial Notice ("RJN"), filed concurrently herewith, Exhibit A, at p. 6 (U.S. State Department Note recognizing Sheikh Mohamed and Sheikh Khalifa as heads of state); Compl., ¶ 18. Accordingly, they are immune from suit, and cannot be subject to this Court's jurisdiction.

## IV.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

### A.   Standard for a Rule 12(b)(1) Motion to Dismiss

When analyzing a complaint for failure to state a claim under Rule 12(b)(1), the Court need not infer allegations sufficient to support federal subject matter jurisdiction, because a plaintiff must affirmatively allege such jurisdiction.  *Valdez v. U.S.*, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993).  The party asserting jurisdiction has the burden of proving all jurisdictional facts.  *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)).  In fact, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *Valdez*, 837 F. Supp. at 1067.

### B.   The FSIA Precludes This Court From Presiding Over This Case

Defendants are officials of a foreign government who are alleged to have committed acts in their official capacities.  As a result they are agents of a foreign sovereign and are beyond the jurisdiction of this Court.  The FSIA provides that foreign states and their instrumentalities and agents are presumptively immune

10

from U.S. jurisdiction.  28 U.S.C. § 1604.  In fact, the FSIA creates a presumption that immunity exists unless one of the enumerated exceptions applies.[5]  *Export Group v. Reef Indus., Inc.*, 54 F.3d 1466 (9th Cir. 1995).  Likewise, individuals who act in their official capacity on behalf of the sovereign are immune from jurisdiction.  *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1102 (9th Cir. 1990) ("a suit against an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly"); *Doe I v. Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004).

Plaintiff contends throughout the Complaint that Defendants committed the alleged acts "under actual or apparent authority of the government of the [UAE]," "with the implied permission and consent of the government of the UAE," and "under actual or apparent authority or color of law of the government of the UAE." Compl., ¶¶ 1, 10-12, 20-22.  As Plaintiff has not– and cannot – plead that any of the exceptions to sovereign immunity apply in this case, Defendants are immune from suit under the FSIA.

Furthermore, even if Plaintiff had not alleged facts showing Defendants' immunity, the law is clear that foreign officials like Defendants are eligible for immunity under the FSIA for acts that were taken within the scope of their official responsibilities.  *Matar*, 500 F. Supp. 2d at 284 (Israeli general who authorized targeted killings of suspected terrorists was immune from jurisdiction under the

---

[5] These exceptions are:  (1) where the foreign state has waived its immunity, (2) when the action is based upon a commercial activity carried on in the U.S. by the foreign state, or upon an act performed in the U.S. in connection with commercial activity of the foreign state, (3) when rights in property taken in violation of international law are in issue, and that property is present in the U.S., (4) when rights in property in the U.S. acquired by succession or gift or rights in immovable property situated in the U.S. are in issue, (5) when money damages are sought against a foreign state for personal injury, death, or damage or loss to property that occurred in the U.S. and was tortiously caused by the foreign state or its actors, (6) in an action to enforce an agreement made by the foreign state to submit to arbitration, (7) for money damages for personal injury or death if the state is designated as a state sponsor of terrorism, and (8) when a suit in admiralty is brought to enforce a maritime lien based upon commercial activity of the foreign state.  28 U.S.C. § 1605(a).

FSIA).  At the time of the alleged detention and mistreatment, Sheikh Khalifa and Sheikh Mohamed were ranking officers in the UAE Army and Air Force, and General Saeed was in charge of Plaintiff's detention facility.  Compl., ¶¶ 10-12. Plaintiff alleges, without any support, that the acts were conducted "outside the scope" of Defendants' official positions; and then argues to the contrary that the actions were undertaken under color of law and in the course and scope of Defendants' official duties.  Such allegations are a transparent attempt to avoid immunity.  Defendants' official positions within the UAE, as acknowledged by Plaintiff, provide even further support for the fact that Defendants are immune from suit.  *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1029 (D.C. Cir. 1997) (holding that when there is no evidence showing that officials' actions were outside of their official responsibilities, they are immune under the FSIA).

## V.   ALL OF PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS

### A.   Standard for Rule 12(b)(6) Motion to Dismiss

Rule 12 (b)(6) of the Federal Rules of Civil Procedure bars suits for failure to state a claim upon which relief can be granted.  *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 113 (C.D. Cal. 1971).  It requires dismissal when the complaint lacks either a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The complaint must allege sufficient facts to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 544.  As held by the Supreme Court, the complaint must state a claim for relief that is "plausible on its face," and when the pleading alleges facts that are "'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility . . .'" and is therefore insufficient.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (citing *Twombly*, 550 U.S. at 557).

While a court must construe all allegations in the complaint in the light most favorable to the plaintiff, it is not required to accept as true conclusory legal allegations cast in the form of factual allegations, unwarranted deductions of fact, or unreasonable inferences. *Iqbal*, 129 S. Ct. at 1949-50. Additionally, the Court is not required to accept as true allegations that are contradicted by exhibits or matters properly subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Where there is no reasonable probability that the defects in a complaint can be cured by amendment, dismissal without leave to amend is proper. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B.     Plaintiff's TVPA Claim Is Time-Barred And Is Not Subject To A Fourteen-Year Tolling Period**

Plaintiff's failure to file his TVPA claim within the ten year statute of limitations period bars his claim. 28 U.S.C. § 1350, note 2(c) (action must be "commenced within ten years after the cause of action arose"). Plaintiff's TVPA claims accrued on either January 11, 1984 (Compl., ¶ 1) or January 11, 1985 (Compl., ¶ 14). Thus, when he filed his Complaint in February 2009, Plaintiff's TVPA claim had been stale for at least fourteen years.[6]

Furthermore, Plaintiff has not alleged any extraordinary circumstances to justify the tolling of TVPA's statute of limitations. *See Deutsch v. Turner Corp.*, 324 F.3d 692, 718 (9th Cir. 2003) (affirming dismissal of plaintiff's complaint brought under the TVPA despite allegations that defendants prevented plaintiffs from filing claims by concealing essential facts); *see also In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160, 1181 (N.D. Cal. 2001) (threats and attempts to suppress claims do not rise to the level of extraordinary

---

[6] A cause of action accrues "when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). *See also Norgart v. The Upjohn Co.*, 21 Cal. 4th 383, 397, 981 P.2d 79, 88 (1999) (in tort actions, the statute of limitations begins to run on the occurrence of the last element essential to the cause of action).

LEGAL_US_W # 64407937.8

circumstances required to justify equitable tolling under TVPA).  Indeed, equitable tolling is an extraordinary remedy which should be used sparingly.  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 457-58, 112 L. Ed. 2d 435 (1990).  Equitable tolling is not limitless.  As the Ninth Circuit explained, "[n]othing in [Ninth Circuit case law] or the [TVPA] statute suggests that Congress intended … the resurrection of claims for damages that may have occurred in the far distant past." *Deutsch*, 324 F.3d at 718, n. 20.

In addition, the statute of limitations should not be tolled where, as here, a plaintiff asserts only discrete instances of human rights violations that did not occur over a prolonged period of time.  *See, e.g.*, *The Hereros v. Deutsche Afrika-Linien Gmblt & Co.*, No. 05-1872, 2006 U.S. Dist. LEXIS 2761, at *27-29 (D.N.J. Jan. 17, 2006) (plaintiff's human rights claims were time-barred because "the discrete events were plainly not part of a continuing pattern . . ." to justify the tolling of the statute of limitations for more than 90 years.)  *See also Hoang Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004) (applying TVPA's equitable tolling principles to the Alien Tort Statute and holding that victims of the "My Lai Massacre" which occurred thirty-two years prior to the filing of the lawsuit "made no showing sufficient to justify tolling … [their] claim for twenty-two [years]").

Here, Plaintiff does not identify any extraordinary circumstances that prevented him from filing suit within the ten years following his detention.[7] Instead, Plaintiff states that he waited over two decades to bring suit because he previously feared "ruthless reprisal and retribution," but that "recent political events" led him to believe that "Defendants, who remain in power at the highest levels of UAE government, would most likely not seek to harm Plaintiff in retribution for the filing of a civil action."  Compl., ¶ 27.  Plaintiff does not provide

---

[7] Defendants do not dispute that the statute of limitations should be tolled for the period of the alleged detention (January 11, 1984 or January 11, 1985 through November 4, 1985) as Plaintiff's allegations suggest that he was unable to file a lawsuit during this time period as a result of his detention.

any details regarding these "recent political events," other than to state that they "have solidified the UAE's desire to maintain favorable relations with the United States." *Id*. Plaintiff offers no basis for his purported belief that he is any safer in bringing suit now than he was fourteen years ago, or any explanation as to how the UAE's purported desires vis-à-vis the U.S. affected his ability to file a lawsuit in the U.S. In fact, Plaintiff alleges that he "continues to be extremely concerned for his safety and the safety of his family relations and loved ones who remain in the UAE," suggesting that he continues to fear reprisal and retribution at the hands of the UAE government. Compl., ¶ 29. Thus, it is entirely unclear what, if anything, explains Plaintiff's undue delay in filing suit.

### C.   Plaintiff's Tort Claims Are Also Time-Barred

Plaintiff's tort claims, which are based on the same facts giving rise to his TVPA claim, are also time-barred. At the time of the alleged incidents, the statute of limitations for Plaintiff's tort claims was one year. *See* Cal. Civ. Proc. Code § 340(3), *amended by* Cal. Civ. Proc. Code § 335.1 (assault, battery, and false imprisonment subject to one year statute of limitations); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285 (9th Cir. 1987) (intentional infliction of emotional distress subject to one year statute of limitations); *Milla v Tamayo*, 187 Cal. App. 3d 1453, 1460 (1986) (civil conspiracy subject to one year statute of limitations).[8] As with his TVPA claim, Plaintiff has not alleged facts to support the tolling of his tort claims. *Spray, Gould & Bowers v. Associated Int'l Ins. Co.*, 71 Cal. App. 4th 1260, 1266, n. 4 (1999) ("when a complaint shows on its face (or with the help of judicially noticed facts) that a pleaded cause of action is apparently barred by the statute of limitations, plaintiff must plead facts which show an excuse, tolling, or other basis for avoiding the statutory bar."); *Negaard v. Dep't of Aeronautics*, 32

---

[8] Even applying the current two years statute of limitations for such claims, Plaintiff's claims are still untimely. *See* Cal. Civ. Proc. Code § 335.1 (assault and battery and personal injury actions statute of limitations is two years).

LEGAL_US_W # 64407937.8

Cal. App. 3d 92, 96 (1973) (a complaint must contain facts, not conclusions, constituting the grounds for estoppel).  Where a plaintiff points to acts of intimidation or violence as a basis for an estoppel argument, he must allege facts showing that he brought suit within a reasonable time after those acts, or the threat or effect of such acts, ceased.  *V.C. v. Los Angeles Unified School Dist.*, 139 Cal. App. 4th 499, 516-517 (2006) (plaintiff failed to diligently bring claim after effect of coercion ended).  Because Plaintiff has proffered only vague and conclusory statements to justify the untimeliness of his claims, and these allegations do not demonstrate that Plaintiff diligently brought suit within a reasonable time after the alleged acts or the threats of such acts occurred (especially since Plaintiff alleges that he continues to fear for his safety and the safety of his family), Plaintiff's tort claims are time-barred.

## VI.   PLAINTIFF CANNOT MAINTAIN A CLAIM UNDER THE TVPA BECAUSE HE DID NOT EXHAUST HIS REMEDIES IN THE UAE

Yet another deficiency with Plaintiff's TVPA claim is his failure to exhaust his remedies in the UAE.  The TVPA provides that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."  28 U.S.C. § 1350, note 2(b).  Although Defendants bear the burden of showing that Plaintiff had remedies abroad which he did not exhaust (S. Rep. No. 102-249, at 10 (1991)); *Hilao v. Estate of Marcos*, 103 F.3d 767, 778, n.5 (9th Cir. 1996)), once Defendants do so, the burden shifts to Plaintiff to prove that local remedies are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."  *Id.* (quoting S. Rep. No. 102-249, at 9.)

Here, Plaintiff's allegations demonstrate that he could have sought redress in the UAE before filing suit in the U.S., but chose not to.  *See* Declaration of Dr. Faraj Abdullah Ahnish ("Ahnish Decl."), filed concurrently herewith at ¶ 25.[9]

---

[9] Dr. Ahnish states that it is "amply clear that the UAE civil courts have jurisdiction to entertain

Plaintiff admits that Defendants' alleged actions violated the UAE's Constitution and its laws, illustrating that such acts could have been brought before a court in the UAE.  *See* Compl., ¶¶ 15, 45, 50, 54, 60.  Nowhere does Plaintiff allege that he ever attempted to file a lawsuit in the UAE, or that he even complained of Defendants' activities to authorities in the UAE.  To the contrary, Plaintiff acknowledges that he could have sued in the UAE, but that his fear of reprisal prevented him from doing so.  Comp., ¶ 27.  *See* Ahnish Decl., ¶ 98 (stating that the UAE government officials enjoy no special privileges from the applicability of the law).  Thus, by Plaintiff's own admission, Plaintiff could have pursued remedies in the UAE.

In addition, Plaintiff has made no showing that efforts to pursue a suit against Defendants in the UAE would have been "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."  *Hilao*, 103 F.3d at 778, n.5 (quoting S. Rep. No. 102-249 at 9.)  Instead, Plaintiff merely states that he feared reprisal if he were to file suit, and that Defendants hold powerful positions in the UAE.  Compl., ¶¶ 27, 29.  Plaintiff's fear of filing a lawsuit, and the fact that Defendants hold "powerful" positions in the UAE do not demonstrate that a lawsuit in the UAE would be "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."[10]  None of the Defendants is entitled to immunity under UAE law, and UAE officials "do not interfere in or attempt to influence the outcome of court proceedings in the Emirate."  *See* Ahnish Decl., ¶¶ 21, 35, 100.  Furthermore, there is no indication the Plaintiff ever tried to assert his claims in the UAE.  Having failed to pursue admittedly available remedies in the UAE, Plaintiff cannot bring his TVPA claims in this District.

---

and adjudicate civil suits based on the causes of action pleaded by the Plaintiff and to award adequate monetary relief."

[10] To the extent Plaintiff is alleging that Defendants are immune from suit in the UAE due to their "powerful" positions, this argument does not help Plaintiff, as Defendants are likewise immune from suit in the U.S. under the FSIA.  *See supra*, Section IV.B.  Furthermore, Defendants are not immune from suit in the UAE.  *See* Ahnish Decl., ¶¶ 94 and 98.

17

## VII.   **DEFENDANTS HAVE NOT BEEN PROPERLY SERVED**

Another ground for dismissing Plaintiff's Complaint is that Plaintiff did not properly serve Defendants with process.  *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4").  Under Federal Rule of Civil Procedure 4(f), an individual in a foreign country may be served with process through one of three means:  (1) by an internationally agreed means of service such as those authorized by the Hague Convention; (2) where there are no internationally agreed means of service, by a method prescribed in the foreign country's law for service in that country, or as the foreign authority directs in response to a letter rogatory, or (unless prohibited by the foreign country's law) by delivering a copy of the summons and complaint to the individual personally, or using a form of mail requiring a signed receipt that the clerk addresses and sends to the individual; or (3) by other means ordered by the court, provided that such means are not prohibited by international agreement.  Fed. R. Civ. P. 4(f).

Here, the Court authorized Plaintiffs to serve Sheikh Khalifa and Sheikh Mohamed by either personally delivering or mailing certified copies of the Summons and Complaint to the UAE Embassy, and to serve General Saeed by mailing copies of the Summons and Complaint to one of the companies he is allegedly affiliated with in the UAE.  Plaintiff has not demonstrated that either of these methods complies with Rule 4(f).  *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (where service of process is challenged, the party on whose behalf it is made must "bear the burden of establishing that service was valid . . .").

### A.   **There Are No Internationally Agreed Means Of Serving UAE Citizens**

The UAE is not a signatory to the Hague Convention, or to any other agreement regarding the service of UAE citizens.  Ahnish Decl. ¶ 96.  Accordingly, there are no "internationally agreed means" of serving Defendants, and Plaintiff

18

could not (and did not) proceed with service under Rule 4(f)(1).

### B.   Plaintiff's Personal Service on Defendants Violated UAE Law

Defendants also could not be served pursuant to Rule 4(f)(2) because the methods of service authorized by the Court are not proper under UAE law.  To satisfy the requirements of UAE law, Plaintiff should have, at a minimum, translated the Summons and Complaint into Arabic and requested that the UAE Embassy deliver the documents to the UAE Ministry of Justice, which would then forward the documents to the proper UAE court clerk for service.  Ahnish Decl. ¶¶ 94-99; *Nabulsi v. Nahyan*, 2009 U.S. Dist. LEXIS 49661, at *25 (Rule 4(f)(2)(A) not satisfied where plaintiff could not show that the process server was authorized to serve process in the UAE).  Plaintiff has not offered any evidence showing that the Summons and Complaint were appropriately translated and delivered.  As a result, Plaintiff's service fails to comply with UAE law.  Ahnish Decl., ¶ 99.

### C.   Plaintiff's Service Under Rule 4(f)(3) Was Defective

Presumably aware that he could not serve Defendants under Rule 4(f)(1) or 4(f)(2), Plaintiff sought to serve Defendants pursuant to Rule 4(f)(3), by filing an *ex parte* application seeking permission to serve Defendants at the UAE's Embassy in the U.S. or at affiliated business in the UAE.  However, service was not proper under Rule 4(f)(3) because Plaintiff did not establish that the Court could exercise personal jurisdiction over Defendants, a prerequisite to proper service under Rule 4(f)(3).  *Nabulsi v. Nahyan*, 2009 U.S. Dist. LEXIS 49661, at *11-12 ("ordering service of process pursuant to Rule 4(f)(3) would constitute an abuse of discretion because plaintiffs have failed to establish that the court is able to exercise personal jurisdiction over [defendant] Sheikh Issa.")  When exercising discretion to authorize alternative service, "an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law."  Fed. R. Civ. P. 4(f)(3) advisory committee's note (1993

Amendments).  As discussed above, Plaintiff has failed to establish that this Court has personal jurisdiction over Defendants.  *See supra*, sections III. A and B.  Thus, Plaintiff's reliance on Rule 4(f) to effectuate service on Defendants was improper.

## VIII.  PLAINTIFF'S CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE

Plaintiff's claims are also barred by the Act of State Doctrine, which "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964).  The doctrine applies when "the relief sought or the defense interposed would [require] a court in the U.S. to declare invalid the official act of a foreign sovereign performed within . . ." its boundaries.  *W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp.*, 493 U.S. 400, 405, 110 S. Ct. 701, 107 L. Ed. 2d 816 (1990).

The Supreme Court has set forth three factors that courts must consider when determining whether to invoke the Act of State Doctrine:  (1) the degree to which consensus has been reached regarding a particular area of international law; (2) the potential significance that the issue may have on the foreign relations of the U.S.; and (3) whether there has been a regime change removing from power the government that perpetrated the act of state.  *Banco Nacional*, 376 U.S. at 427-28. The Ninth Circuit has added a fourth factor, requiring consideration of whether the "foreign state was acting in the public interest."  *Liu v. Republic of China*, 892 F.2d 1419, 1432 (9th Cir. 1989).

In this case, Plaintiff has not alleged that there is a consensus in international law that detention of the type alleged by Plaintiff should be prohibited; therefore the first factor of the Act of State Doctrine cuts in favor of dismissal.  *Banco Nacional*, 376 U.S. at 427-28 (holding that the less the degree of codification or consensus concerning a particular area of international law, the less appropriate it is for the

judiciary to render decisions regarding it).  Second, important foreign policy interests, such as maintaining relations with the ruling family of Abu Dhabi and the President of the UAE, would be impacted should this case be heard here, further favoring dismissal.  *Id.* (holding that keeping foreign relations exclusively "in the political branches" is favored when there are important foreign relations issues).  Third, Plaintiff acknowledges that there has not been a change in UAE government since his alleged detention and that Defendants are still in power in the UAE.  Compl., ¶ 27.  Thus, an adverse ruling in this case against the UAE government could negatively impact the U.S.'s foreign relations with the UAE.  *Cf. Repub. of Philippines v. Marcos*, 806 F.2d 344, 359 (2d Cir. 1986) (holding that the danger of interference with foreign policy is lessened when the Defendant's government is no longer in power).  Finally, the basis for Plaintiff's detention is unclear from the Complaint, and Plaintiff has not established that his detention was without justification.  *See* Ahnish Decl., ¶ 13 (stating that the UAE Constitution provides that, "No person may be … detained … except in accordance with the provisions of law.")  As a result, he should not be allowed to proceed against Defendants.

## IX.   THE COURT SHOULD DISMISS THIS ACTION UNDER THE DOCTRINE OF FORUM NON CONVENIENS

Forum non conveniens grounds also weigh in favor of dismissal.  The doctrine of forum non conveniens allows a federal district court to dismiss an action on the grounds that a foreign court offers a more appropriate and convenient forum for adjudicating the controversy.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 127 S. Ct. 1184, 1188, 167 L. Ed. 2d 15, 22 (2007).  The party moving for dismissal on forum non conveniens grounds bears the burden of demonstrating that there is an adequate alternative forum and that the balance of

relevant private and public interest factors favor dismissal.  *Creative Tech., Ltd.*, 61 F. 3d at 696 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 843, 91 L. Ed. 1055, 1062-63 (1947)).  Here, the availability of an alternative forum and the balance of private and public factors make dismissal on forum non conveniens grounds appropriate.

### A.      The UAE Offers An Adequate Alternative Forum For This Case

The first step in forum non conveniens analysis is the determination of whether an adequate alternative forum exists.  *Creative Tech., Ltd.*, 61 F.3d at 699.  Courts have wide discretion to dismiss claims under forum non conveniens grounds where a more appropriate forum exists.  *See Villeda Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283 (11th Cir. 2009) (finding no abuse of discretion in lower court's holding that an adequate alternative forum existed even though the foreign forum was potentially dangerous for the plaintiffs); *see also Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 523 (S.D.N.Y. 2006) (stating that U.S. courts should not intrude into cases more appropriately handled where the alleged torture occurred).  Establishing the forum's adequacy does not require a strenuous evidentiary showing.  *Mastafa v. Australian Wheat Bd. Ltd.*, No. 07 Civ. 7955, 2008 U.S. Dist. LEXIS 73305, at *22 (S.D.N.Y. Sept. 25, 2008).  Rather, an adequate alternative forum exists so long as the remedy provided by the foreign forum is not so inadequate or unsatisfactory that it amounts to no remedy at all.  *Creative Tech., Ltd.*, 61 F.3d at 696.  This requirement is generally satisfied so long as the defendant is amenable to service of process in the foreign forum and that forum permits litigation of the subject matter of the dispute.  *Id.*

Here, Defendants are amenable to service of process in the UAE, and the UAE clearly permits claims like the ones brought by Plaintiff to be asserted in its courts.  The UAE Constitution prohibits wrongful arrests, improper detention, and torture of all persons, including non-citizens.  Ahnish Decl., ¶¶ 13-14.  Importantly, unlike the FSIA, UAE law does not confer immunity for any of the Defendants,

22

meaning claims against Defendants offer the potential for a real judgment. *Id.* at ¶ 35.  Consequently, the UAE offers not only an alternative, but an even better forum for Plaintiff to adjudicate his claims.

> **B.**   **Both Private and Public Interest Factors Justify Dismissal for Forum Non Conveniens**

The balance of private and public interest factors also favors dismissal on forum non conveniens grounds.  Private interest factors include:  (1) the relative ease of access to sources of proof; (2) the availability and cost of compulsory process for attendance of unwilling witnesses, and (3) all other factors that render trial expeditious and inexpensive.  *Gulf Oil Corp.,* 330 U.S. at 508.  These efficiency factors all favor dismissal of the instant case.

As all the acts alleged by Plaintiff occurred in the UAE, all sources of proof, both documentary and testimonial, are most likely within the UAE, and certainly not in California.  Additionally, it would be practically impossible to obtain the attendance of unwilling witnesses at depositions or a trial in California, as the witnesses with relevant information reside in UAE, which is beyond this Court's subpoena power.  On the other hand, if this case were to proceed in the UAE, it would be much easier to obtain the attendance of unwilling witnesses. *See* Ahnish Decl., ¶ 49(f) (stating that there is a right to produce witnesses in the UAE.) Furthermore, to the extent third parties are willing to be deposed in the UAE, if this case were venued in the UAE, the parties likely would be represented by UAE counsel rather than California counsel, thus making it far less costly for counsel to attend depositions in the UAE.  In addition, as Defendants hold important positions within the UAE government, it would be much less disruptive to the functioning of the UAE government if this case were tried in the UAE than if Defendants were forced to spend a prolonged period of time in California away from their work.

Because the private interest factors weigh heavily in favor of dismissal, the Court need not consider the public interest factors.  *Villeda Aldana*, 578 F.3d at

1293 (holding that it was not an abuse of discretion for the lower court to only consider the private interest factors). However, the public interest factors also favor dismissal. These factors include: (1) the administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; and (5) the avoidance of unnecessary problems in conflicts of law. *Creative Tech., Ltd.*, 61 F. 3d at 703-704.

First, U.S. courts have an interest in removing the case to the UAE in order to help alleviate the U.S. judicial system's congestion. *See* Ahnish Decl., ¶ 26. Second, imposing jury requirements on U.S. citizens would unfairly require them to hear a case that has no relation to their nation or state, while in the UAE the resolution of these issues directly impacts UAE citizens. *See Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001) (finding that California residents have little to no interest in a case involving services rendered in a foreign jurisdiction). Third, the case is of localized concern, as it involves actions that allegedly occurred entirely within the UAE and were ostensibly orchestrated by members of the Royal Family. Reasonably then, UAE citizens have a localized concern in the actions taken by their rulers, which weighs in favor of dismissal on forum non conveniens grounds. *See United Bank for Africa PLC v. Coker*, No. 94 Civ. 0655, 2003 U.S. Dist. LEXIS 20880, at *17-18 (S.D.N.Y. Nov. 17, 2003) (holding that when a state official perpetrates the alleged misconduct, the foreign forum has a much stronger interest in hearing the case). Fourth, Plaintiff has alleged violations of UAE law, meaning that resolution of these issues would be more appropriately conducted in the foreign forum. *See* Compl., ¶¶ 50, 54, 60; *Leetsch v. Freedman*, 260 F. 3d at 1105 (the fourth public interest factor weighs heavily in favor of the foreign forum when the district court is unfamiliar with foreign law and would be required to

1  translate a great deal of that law, "with all the inaccuracy and delay that such a

2  project would necessarily entail.")

3       Finally, international comity also weighs in favor of litigating this case in the

4  UAE to avoid unnecessary conflicts of law.  International comity provides that in

5  certain circumstances, a U.S. court will give *res judicata* effect to foreign

6  judgments, or dismiss a case before it in deference to a case pending in a foreign

7  jurisdiction.  Although there is no case pending on this matter in the UAE, there is a

8  strong policy interest in courts refusing to hear a suit in order to protect the positive

9  political relations between the two countries.  *See Villeda Aldana*, 578 F.3d at 1299

10  (finding that dismissal of a case is appropriate when the foreign state might regard

11  trying the case in an American court as "a tacit acceptance of the appellants'

12  assertion that the [defendant's] judicial system is too corrupt to justly resolve the

13  dispute").  Accordingly, both the private and public interest factors demonstrate that

14  this case should be tried in the UAE, and not in California.

## X.     CONCLUSION

16       For the foregoing reasons, Defendants respectfully request that the Court

17  dismiss Plaintiff's claims, without leave to amend.

DATED:  May 14, 2010          THOMAS P. O'BRIEN
                              KATHERINE F. MURRAY
                              NICHOLAS BEGAKIS
                              PAUL, HASTINGS, JANOFSKY & WALKER LLP


                              By:_____/s/_____
                                          THOMAS P. O'BRIEN

                              Attorneys for Defendants
                              HH Sheikh Khalifa Bin Zayed Al Nahyan, HH Sheikh
                              Mohamed Bin Zayed Al Nahyan, and General Saeed
                              Hilal Abdullah Al Darmaki

LEGAL_US_W # 64407937.8

25