THOMAS P. O'BRIEN (SB# 166369)
thomasobrien@paulhastings.com
KATHERINE MURRAY (SB# 211987)
katherinemurray@paulhastings.com
NICHOLAS BEGAKIS (SB# 253588)
nickbegakis@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendants
His Highness Sheikh Khalifa Bin Zayed Al Nahyan, His Highness Sheikh Mohamed Bin Zayed Al Nahyan, and General Saeed Hilal Abdullah Al Darmaki

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Khaled Al Hassen,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>SHEIKH KHALIFA BIN ZAYED AL NAHYAN, an individual; SHEIKH MOHAMED BIN ZAYED AL NAHYAN, an individual; GENERAL SAEED HILAL ABDULLAH AL DARMAKI, an individual; and DOES 1 to 10, inclusive,<br><br>　　　　Defendants. | CASE NO.: 09-CV-01106-DMG (FMOX)<br><br>**DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>[Reply in Support of Motion to Dismiss; Declaration of Nicholas Begakis; and Opposition to Request for Judicial Notice filed and served concurrently herewith] |

LEGAL_US_E # 88879215.1

OBJECTIONS TO EVIDENCE

His Highness Sheikh Khalifa Bin Zayed al Nahyan, His Highness Sheikh Mohamed Bin Zayed Al Nahyan, and General Saeed Hilal Abdullah Al Darmaki (collectively "Defendants") hereby object to the irrelevant and improper evidence contained in the Declarations of Khaled Al Hassen and Nadia Hassen submitted in support of Plaintiff Khaled Al Hassen's ("Plainitff") Opposition to Defendants' Motion to Dismiss. The statements made in these declarations do not establish personal knowledge of the facts set forth therein. Fed. R. Evid. 602. Similarly, the Plaintiff fails to appropriately authenticate documents attached to his declaration. Fed. R. Evid. 901. A declaration that merely sets forth conclusions without providing any further foundation is insufficient and should not be considered. *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (holding that a declaration where the declarant lacked personal knowledge is entitled to no weight); *Gray v. Shell Oil Co.*, 469 F.2d 742, 750 (9th Cir. 1972) (holding that "opinion testimony, such as here offered, without a factual basis in the record, is inadmissible"). For these reasons the Court should decline to consider the evidence offered in the declarations submitted by Plaintiff and his wife Nadia Hassen. Specific Objections are set forth below.

## Specific Objections to the Declaration of Khaled Al Hassen

| **EVIDENCE** | **EVIDENTIARY OBJECTIONS** |
|---|---|
| Paragraph 4: I had been hired by Sheikh Khaled bin Ahmed, a member of the Abu Dhabi royal family, and his brother Sheikh Shaya, to help start up their new marketing firm. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid. 602) |
| Paragraph 5: A conflict arose between the father of defendants' father, Sheikh Zayed Bin Sultan Al Nehyan, and the father of my employers, Sheik Ahmed Al Hamed arising out of the transfer of land without compensation owned by Sheik Ahmed Al Hamed to the Saudis. | Lack of personal knowledge (Fed. R. Evid. 602); Lacks foundation (Fed. R. Evid. 602); Irrelevant and immaterial (Fed. R. Evid. 402) |
| Paragraph 6: Defendants Sheikh Khalifa Bin Zayed Al Nehyyan and Sheik Mohamed Bin Zayed Al Nehyan, sons of Sheikh Zayed Bin Sultan Al Nehyan, as well as defendant General Mohamed Saeed Al Darmaki had business interests and business associates who were in direct competition with ITC for international business clients. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid. 602) |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10 | Paragraph 7:  Attached hereto as Exhibit "1" is a true and correct copy of a photograph depicting me and Beech Aircraft Chairman of the Board Olive Ann Beech, one of my business contacts in the United States.  … These companies were competing for contracts with French, British and Italian companies represented by defendant General Mohamed Saeed Al Darmaki and close associates of Sheikh Khalifa and his brother Sheikh Mohamed. | Lack foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| 11<br>12<br>13<br>14<br>15<br>16<br>17 | Paragraph 8:  I believe one motivation for my abduction was to disrupt the business relationship between ITC and these American companies, and to prevent the American companies from securing lucrative business contracts in UAE.  Following my abduction and torture, defendant's French, British and Italian clients won contracts over ITC's American firm. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid. 602); Irrelevant and Immaterial (Fed. R. Evid. 402) |

| | |
|---|---|
| Paragraph 9: I also believe another motivation for my abduction was based upon the belief among defendants that I was working on behalf of the United States government as an American Central Intelligence Agency operative. During my captivity at the hands of defendants for almost 2 years, my torturers claimed that I was an operative for the United States Central Intelligence Agency. My torturers, at the direction of defendants, demanded that I give them a list of all CIA operatives in the UAE. I was told they believed I was working on behalf of the United States government with their rivals, my employer and other Al Nehyyan family members to overthrow the Abu Dhabi rulers. I was also targeted, they said, because of my close relationship with American defense contractors. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801) |
| Paragraph 10. On January 16, 1984, at the direction of defendants, I was abducted at gun point by three men in civilian clothes while driving to work … The next day I was allowed one brief telephone call to my wife, and after that, I was not allowed any contact with my wife, children or anyone from the outside world for nine months. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Irrelevant and Immaterial (Fed. R. Evid. 402) |

LEGAL_US_E # 88879215.1

- 4 -

OBJECTIONS TO EVIDENCE

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18 | Paragraph 11: Defendant General Saeed Hilal Abdullah Al Darmarki supervised the prison in Abu Dhabi where I was detained for the duration of my captivity. The prison was not under the supervision by the Abu Dhabi police or part of any official justice system in Abu Dhabi or the UAE. My defendants, my captors and torturers, did not act within the bounds of any laws whether of the UAE or international laws or treaties and my fellow prisoners and I were shown little basic human rights or even mercy. My fellow prisoners and I were not charged with any crime, allowed access to legal representation, or even allowed communication with our loved ones. All of the dozens of prisoners who I saw and heard during my incarceration were subject to repeated and continuous physical torture which was horrible to hear and witness. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Impermissible lay opinion (Fed. R. Evid. 701); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| 19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | Paragraph 12: During my confinement in the prison under the personal control of defendants, I was continually beaten on a daily basis, especially around the head by defendant General Saeed Hilal Abdullah Al Darmarki, Sheik Mohamed Bin Zayed Al Nahyan, and those acting on their behalf and under their control. . . . I suffered each of these and countless other horrors while in defendants' custody, by their hand, and at their direction. | Lacks foundation (Fed. R. Evid. 602); Irrelevant and Immaterial (Fed. R. Evid. 402) |

| | |
|---|---|
| Paragraph 13: When I did request legal representation, I was left without food for several days because I requested to have an attorney present or to be taken to a court of law to hear my charges read before me in accordance with the UAE's own constitution, the UN covenant on Civil and Political Rights and the laws and treaties of the United States. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid. 602); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| Paragraph 14: Defendants while holding me captive in a secret and unofficial prison repeatedly lied to the United States Government, including without limitation, the United States State Department and the US Consular Carol Millikan at the United States Embassy, and told United States representatives that they had no knowledge about my whereabouts, and later they claim that I had left the country. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| Paragraph 15: Defendants, through their intermediaries, also misrepresented to the United States government that I had engaged in misdeeds involving contracts with the UAE to purchase French Mirage jets. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801); Irrelevant and Immaterial (Fed. R. Evid. 402) |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | Paragraph 16: It was nine months after my abduction by defendants and my captivity that my existence in defendants' custody was disclosed and I was allowed to meet for the first time with the US Consular Carol Millikan. Before my first meeting with the US Consular, I was told that if I disclosed the torture that I would be dragged out to the desert and shot dead. If asked about my whereabouts they told me they would lie and say that I had escaped and had no more information. Defendant Sheikh Mohamed bin Zayed told me that if I did not cooperate my wife and three children "would be history." Defendant General Saeed Hilal forcibly placed a machine gun in my mouth and threatened to kill me if I discussed my torture and mistreatment in the prison. Around this time I was also visited by Mr. Abdul Jalil Abdul Jalil who was with the State Security Agency and had been sent by the head of the State Security Agency, Col. Nasser at the direction of defendants. He specifically warned me not to mention any torture or mistreatment to the visiting U.S. official otherwise my family and I would be in great danger. Defendants resented the interference from the United States government and they believed my wife was behind the activity of the United States government to win my release. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801) |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | Paragraph 17: High level American diplomats and elected official interceded on my behalf and eventually secured my release from detention. These representatives included Congressman Esteban E. Torres, who wrote directly to Sheik Zayed Bin Sultan Al Nehyan to win my release. Attached hereto as Exhibit "2" is a true and correct copy of this correspondence from Congressman Torres. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| 10<br>11<br>12<br>13<br>14<br>15<br>16 | Paragraph 18: The few letters that defendants allowed to be sent out of the prison were inspected by my captors and then delivered by defendants' intermediaries to the United States government. After September 1984, my wife wrote letters to me from the United States and occasionally defendants permitted me to read them. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| 17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | Paragraph 19: While I was inside the prison under defendants' control and not long before my release defendants sent Mr. Nasser, a State Security Agent, to visit me. He told me, "brother Khaled, I want you to promise that you will never ever talk about all these Abu Dhabi events to anyone, period. Otherwise, you will never be able to see your family, or your family will never see you. We are a large organization. Our people are every where, even in America. They can do the job right." I told him that I promised not to tell anyone about what had happened to me. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801) |

| | |
|---|---|
| Paragraph 20: On my way from the jail as I was escorted by another UAE security officer and before my flight out of the UAE to the United States the officer made the same threat. I also told him that I promised not to tell. These agents made it clear to me in no uncertain terms that they were speaking on behalf of defendants, and that if I spoke about my torture and mistreatment at the hands of defendants and their agents that defendants would hunt me down and murder me and my family in the United States. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801) |
| Paragraph 21: Defendants were aware that after my release that I was returning to my home in West Covina, California. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602) |
| Paragraph 22: Since my return home to West Covina, California, I heard numerous reports of other people being tortured at the hands of defendants in their "secret" prisons. | Inadmissible hearsay (Fed. R. Evid. 602) |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | Paragraph 23: After the terrorist attack against the United States on September 11, 2001, the United States government instituted intensive domestic security measures and closely monitored travelers from the UAE. It is important to mention in this regard that three of the highjackers involved in the September 11 attacks were originally from the UAE with UAE passports. Mohamad Atta, the ring leader of the terrorists attacks, also had a UAE passport. The United States also reacted forcefully against all perpetrators of the attacks and their supporters and networks. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Irrelevant and immaterial (Fed. R. Evid. 402); Prejudicial nature outweighs probative value (Fed. R. Evid. 403) |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20 | Paragraph 24: As a result of the layers of security measures that were instituted over time by the United States government, and the charged political environment against external terrorist threats from the Middle East in particular, I began to be less fearful of defendants and I was encouraged by Senator Boxer and Congressman Brownback to take action against my captors and torturers and pursue my legal rights. Specifically, as a result of the response of the United States to the terrorist attacks of September 11, I began to believe that defendants who had gained higher office in the UAE government since my captivity would not attempt to commit an act of terrorism by sending an agent to harm an American citizen on American soil under these circumstances especially given the enhanced security measures and powerful response by the United States government against all perpetrators of the terrorist attacks. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801) |

21
22
23
24
25
26
27
28

LEGAL_US_E # 88879215.1

- 11 -                                    OBJECTIONS TO EVIDENCE

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | Paragraph 25: My research indicated that as a result of the September 11, 2001 attacks, the United States government has been increasingly much better prepared to identify foreign agents, monitor their activities, and intercede to avoid harm to American citizens. The United States government began dedicating enormous resources to this end after the 2001 terrorist attacks and publicized the need for vigilance among United States citizens by, among other things, dedicating large number of federal agents to counter-terrorism and security, creating a new Department of Homeland Security, passage into law of the USA Patriot Act, creating a security index (Homeland Security Advisory System), increasing and coordinating surveillance at airports and other ports of entry into the country and improving and coordinating electronic data bases and intelligence gathering for security purposes through the new Terrorist Threat Integration Center. These measures did not take place "overnight", but required years to develop and implement, particularly following adoption of the recommendations by the 9-11 Commission. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801) |

25
26
27
28

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21 | Paragraph 26: Only after the United States government had instituted these measures did I begin to feel I could begin to assert my rights against defendants without placing my family and myself at risk.  That is not to say that I am not in fear of defendants given their immense wealth, unbridled power and their access to governmental mechanisms and agents in the UAE who are unrestrained by the rule of law.  It did require an act of courage to assert my claims against defendants as long as defendants have access to power.  However, given the myriad steps the United States government has taken since the attack of September 11, 2001, four years later, around September 2005, I began actively to research my claims because I came to believe that my government could protect me and my family from defendants' malice and retribution for exposing their crimes against me and other innocent people detained and taken into their custody. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602) |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13 | Paragraph 27: At the time of my abduction, detention and torture over a period of 22 months defendant Sheikh Mohamed was a young air force major in his early twenties. He was the fourth son of the president and an air force officer. During my captivity at the hands of defendants, I endured physical and psychological torture on a daily basis, particularly at the hands of Sheikh Mohamed bin Zayed al Nehyan. In a calculated move, the scale of torture began to decrease one day in September, 1984, just before the first visit of the U.S. Counselor, Mrs. Desiree Milliken, to the detention center. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602) |
| 14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | Paragraph 28: At no time was there ever a warrant issued for my arrest or any criminal charge issued or filed against me. I was informed by defendants and their agents while in prison that a verbal order for my capture and torture originated from Defendant Sheikh Mohamed. I have first hand knowledge of dozens of people who were subject to Sheikh Mohamed's verbal orders to detain and torture. Major Salem Sultan of the UAE Corp of engineers was also subject to such extrajudicial orders from Sheikh Mohamed, as were many others. At the time of my detention, Sheikh Khalifa was the crown prince of Abu Dhabi and not ruler of the UAE | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801) |

27
28

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | Paragraph 29:  Under no circumstances can I obtain justice against the defendants in any Abu Dhabi court where the defendants are members of the Royal Family, wield limitless power, do not respect or recognize an independent judiciary or the rule of law when applied to them, where people cannot even criticize the Royal Family in public or in print, where I was tortured and held in captivity for 22 months at the direction and by the hand of defendants and where my life and the lives of my wife and children were repeated threatened by defendants and their agents should | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid 602); Inadmissible hearsay (Fed. R. Evid. 801) |

**Specific Objections to the Declaration of Nadia Hassen**

| EVIDENCE | EVIDENTIARY OBJECTIONS |
|---|---|
| Paragraph 4: While I was in Abu Dhabi soon after my husband had disappeared I received a phone call from a local man who asked me, "are you alone?" He said because Khaled was not around anymore, how would I like to "go for a ride in the desert." This statement is a common local euphemism in Abu Dhabi which is used to threaten someone with physical harm. | Lacks foundation (Fed. R. Evid. 602); Inadmissible hearsay (Fed. R. Evid. 801) |
| Paragraph 5: The United States Consular's office told me that defendants' representatives had officially denied to the U.S. Embassy that my husband was in their custody in Abu Dhabi. The United States consular representative told me that these UAE contacts told them that my husband had left Abu Dhabi to Saudi Arabia. I confirmed with the United States Embassy that my husband could not have left Abu Dhabi because I had his passport. | Inadmissible hearsay (Fed. R. Evid. 801); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| Paragraph 6: Before leaving Abu Dhabi, I received another call after my husband was abducted and secretly held captive in which I was instructed by the caller to leave the UAE or "something bad" would happen to me and my four children. | Inadmissible hearsay (Fed. R. Evid. 801); Irrelevant and Immaterial (Fed. R. Evid. 402) |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | Paragraph 7: Around September or October 1984, I received a call at my home in West Covina. The caller asked to speak with "Khaled." I told him that Khaled was not home. He laughed at me viciously and then in a threatening voice, said that if I talked to anyone about my husband that I would never see him again. He spoke in Arabic with a local Abu Dhabi dialect. It was clear to me that by [sic] this threat was instigated by defendants to intimidate me from pursuing my efforts to encourage the United States State Department to free my husband. | Inadmissible hearsay (Fed. R. Evid. 801); Lacks foundation (Fed. R. Evid. 602); Lacks personal knowledge (Fed. R. Evid. 602); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| 13<br>14<br>15<br>16<br>17<br>18 | Paragraph 8: I wrote to my husband while I lived in West Covina, California. I would deliver my letters to the United States State Department which in turn assured me that they would hand them over to my husband's captors for delivery. | Inadmissible hearsay (Fed. R. Evid. 801); Irrelevant and Immaterial (Fed. R. Evid. 402) |
| 19<br>20<br>21<br>22<br>23 | Paragraph 9: While living in the United States, I made numerous appeals to defendants on behalf of myself and my children in my letters which I was sure defendants would read before delivering them to him, pleading for my husband's release. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid. 602); Irrelevant and Immaterial (Fed. R. Evid. 402) |

24
25
26
27
28

LEGAL_US_E # 88879215.1

- 17 -

OBJECTIONS TO EVIDENCE

| | |
|---|---|
| Paragraph 10. While my husband was in captivity under the control of defendants, my brother-in-law Ziad Al Hassen had numerous contacts with Congressman Torres and the late Senator Paul Simon. Congressman Torres personally intervened on my husband's behalf in an attempt to obtain his release. Congressman Torres worked for over a year to win my husband's release from defendants. | Lacks foundation (Fed. R. Evid. 602); Lack of personal knowledge (Fed. R. Evid. 602); Irrelevant and Immaterial (Fed. R. Evid. 402) |

DATED: JULY 12, 2010        THOMAS P. O'BRIEN
                            KATHERINE MURRAY
                            NICHOLAS BEGAKIS
                            PAUL, HASTINGS, JANOFSKY & WALKER LLP

                            By: _____/s/_____
                                        THOMAS P. O'BRIEN

                            Attorneys for Defendants
                            His Highness Sheikh Khalifa Bin Zayed Al Nahyan,
                            His Highness Sheikh Mohamed Bin Zayed Al
                            Nahyan, and General Saeed Hilal Abdullah Al
                            Darmaki